FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

'14 AUG 12 PM 2: 59

OFFICE OF THE CLERK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 8:13CR105 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **PLEA AGREEMENT** |
| ZACKARY AUSTIN, | ) | |
| | ) | |
| Defendant. | ) | |

IT IS HEREBY AGREED between the plaintiff, United States of America, through its counsel, Deborah R. Gilg, United States Attorney and, Keith Becker, DOJ Trial Attorney; Sarah Chang, DOJ Trial Attorney; Michael P. Norris, Assistant United States Attorney and defendant, ZACKARY AUSTIN, and Chad D. Primmer, counsel for defendant, as follows:

# I

## THE PLEA

A.     CHARGE(S) & FORFEITURE ALLEGATION(S).

Defendant agrees to plead guilty to Count III of the Indictment. Count III charges Conspiracy to Distribute Child Pornography in violation of Title 18, United States Code, Section 2252A(a)(2)&(b)(1).

Defendant further agrees to admit to the Allegation of Forfeiture in the Indictment.

B.     In exchange for the defendant=s plea of guilty as indicated above, the United States agrees as follows:

1.     The United States will move to dismiss Counts I, II, IV, V, VI and VII at the time of sentencing.

# II

## NATURE OF THE OFFENSE

A.     ELEMENTS EXPLAINED.

Defendant understands that the offense to which defendant is pleading guilty has the following elements: 1) Defendant reached an agreement or came to an understanding with at least one other person; 2) While the agreement or understanding was in effect a co-conspirator

1

distributed child pornography; 3) The defendant or another knowingly distributed, or attempted to distribute, a visual depiction in interstate commerce by any means, including by computer; 4) The production of such visual depiction involved the use of a minor engaging in sexually explicit conduct; 5) That such visual depiction was of a minor engaging in sexually explicit conduct; 4) The defendant knew that such visual depiction was of sexually explicit conduct; and 6) The defendant knew that at least one of the persons engaged in sexually explicit conduct in such visual depiction was a minor.

B.    ELEMENTS UNDERSTOOD AND ADMITTED - FACTUAL BASIS.

Defendant has fully discussed the facts of this case with defense counsel. Defendant has committed each of the elements of the crime, and admits that there is a factual basis for this guilty plea. The following facts would be proven by the United States at trial:

Defendant has fully discussed the facts of this case with defense counsel. Defendant has committed each of the elements of the crime, and admits that there is a factual basis for this guilty plea. The following facts are true and undisputed.

"Website A," as described in the Indictment, was a child pornography social networking website whose primary purpose was the advertisement and distribution of child pornography that operated from March of 2012 until December of 2012. The name of "Website A" contained a term referring to a sexual interest in children. As of December 8, 2012, the site listed over 8,100 members. The rules of the site, which were accessible on the main page to anyone who accessed "Website A," described it as a tool for communication among pedophiles to discuss their interests and share "content" - content referring to child pornography.

Users could register on "Website A" with a username and a password. Once registered, users could set up a profile that included a picture, personal information, contact information, and other functions such as blogs, uploaded files, web pages, or polls. Many users had a user photo, sometimes called an "avatar," that was in and of itself an image of child pornography. Although users could register and set up their own profile, registration was not required to access "Website A." Any user could access most of the site, including postings of child pornography, anonymously without registering or logging in.

"Website A" contained more than 17,000 images, all of which depicted children, which were accessible to any user who accessed the site, whether registered or not. Those images

2

depicted minor children engaging in sexually explicit conduct with adults or other children, minor children posed while exposing their genitals, or images of child erotica. Most of those images were of prepubescent children. Many of those images depicted infant and toddler-aged children being sexually abused by adults or posed to expose their genitals. "Website A" also contained approximately 120 videos that included videos of minor children, some of whom are prepubescent, engaging in sexually explicit conduct with adults or other children.

"Website A" also contained a section for members to set up groups. There were over 300 groups on "Website A." Any member could start a group. Within a group, members could post images and messages which were visible to all group members. Groups could be open or closed. The vast majority of groups on "Website A" were open. In an open group, all users who access the board, even those who had not registered and logged in with a username and password, could view images and messages posted to the group. In a closed group, messages and images were visible only to group members.

The names and descriptions of all groups on "Website A" were listed and visible to anyone who accessed the site, whether the group was open or closed. The number of members in any given group varied from a handful to dozens to hundreds to over a thousand. Open groups which were accessible to all users essentially functioned as labels or subcategories for postings of distinct types of child pornography on the site. For example, there was a group with over 1,000 members whose group description stated it was for pictures and videos produced only in 2012. That group contained numerous images of infant and toddler aged children whose genitals are exposed and/or are being subjected to sexual abuse. Other open groups on "Website A" were dedicated to, for example: sexually explicit images of kindergarten age girls ages 4-8 and images of infant and toddler aged children being sodomized. Within those groups, the group descriptions and images posted within them were consistent with their group titles. All of those groups contained images of minor children engaging in sexually explicit conduct with adults or other children, or posed to expose their genitals.

"Website A" users utilized advanced technological means in order to undermine law enforcement's attempts to identify them. For example, "Website A" was technically designed to facilitate anonymous communication by its users, whether they were registered or not. Only a user who had installed special software on the user's computer could access "Website A." That

3

software enabled the communications of "Website A" users to be routed through multiple computers in order prevent communications from being traced back to the users.

"Website A" users also frequently discussed and advised each other about security, anonymity, and preventing detection by law enforcement. For example, multiple users posted entries in "Website A" "blogs" available to all "Website A" users about: the proper use of encryption software and techniques to hide and/or password-protect child pornography collections in the event of a law-enforcement search; programs to be used to wipe or clean data from a user's computer; and software that could be used to browse the Internet and download child pornography in such a way as to maintain the user's anonymity online. In addition, a group existed whose description stated that it was dedicated to discussing how to identify other actual pedophiles in the real world and online, and how to distinguish someone claiming to have actual access to a child from someone who might be a law enforcement agent.

The defendant, ZACKARY AUSTIN, was a registered member of "Website A" who used the screen name "slutcpl" and display name "kinky_cpl." AUSTIN registered as a member of "Website A" on October 29, 2012. AUSTIN's board avatar, which he uploaded to the site, depicted a prepubescent female nude from the waist down with her legs spread and vagina exposed. AUSTIN accessed child pornography images on "Website A" on at least the following dates: November 21, 23-24, 26, 28, and 30, and December 3-6, and 8. AUSTIN consistently accessed the site between those dates. AUSTIN joined over 30 groups, including closed (private) groups: "kids with dogs and other animals," "salty milk" (i.e., children covered in semen), and "fans of [a well-known victim of child pornography]." He was also a member of open groups including "private and rare pics," "real producers meeting place," and "Pedo-Ci nemaXXX PEDOVIDS with NO LIMITS!" AUSTIN posted favorable comments on "Website A" regarding numerous images of child pornography that had been posted on "Website A" by other users. AUSTIN also exchanged numerous private messages with other users of "Website A."

When AUSTIN joined and participated in "Website A," he had already been charged with Receipt and Possession of Child pornography in the District of Nevada, involving unrelated child pornography conduct. In that case, he was found with over 2,000 videos and over 30,000 still images of child pornography. During his interview with law enforcement in that case he

4

admitted that he had been involved with child pornography for approximately 2 years and that his activity had gotten worse over time.

AUSTIN continued to access and participate in "Website A" even after he was sentenced in his Nevada child pornography case and allowed to self-report to prison. Law enforcement identified AUSTIN via IP addresses used by "slutcpl" to access "Website A" while law enforcement was monitoring the site between November 19 and December 8, 2012, which were ultimately tied to an Internet service account that belonged to a family member of AUSTIN. During a subsequent interview with law enforcement agents AUSTIN admitted to his participation in "Website A" as user "slutcpl."

### III

### PENALTIES

A.     Defendant understands that the crime to which defendant is pleading guilty carries the following penalties:

        1.     A maximum 40 years in prison and a mandatory minimum of 15 years;

        2.     A maximum $250,000 fine;

        3.     A mandatory special assessment of $100 per count;

        4.     A term of supervised release of at least 5 years and up to life. Defendant understands that failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring defendant to serve in prison all or part of the term of supervised release; and,

        5.     Possible ineligibility for certain Federal benefits.

The statutory maximum of 40 years and the mandatory minimum of 15 years result from the Defendant's prior conviction in the District of Nevada for the receipt of child pornography.

### IV

### AGREEMENT LIMITED TO U.S. ATTORNEY'S OFFICE
### DISTRICT OF NEBRASKA AND THE UNITED STATES DEPARTMENT OF JUSTICE

This plea agreement is limited to the United States Department of Justice and the United States Attorney's Office for the District of Nebraska, and cannot bind any other state or local prosecuting, administrative, or regulatory authorities.

5

## V

## PARTIES' SENTENCING RECOMMENDATIONS

A.   ACCEPTANCE OF RESPONSIBILITY.

The United States will not recommend any adjustment for Acceptance of Responsibility if defendant:

1.   Fails to admit a complete factual basis for the guilty plea at the time it is entered, or
2.   Denies involvement in the offense, gives conflicting statements about that involvement, or is untruthful with the court or probation officer, or
3.   Fails to appear in court, or
4.   Engages in additional criminal conduct, or
5.   Attempts to withdraw the guilty plea, or
6.   Refuses to abide by any lawful court order, or
7.   Contests or assists any third party in contesting the forfeiture of property(ies)seized or forfeited in connection with this case.

B.   CRIMINAL HISTORY.

The parties have no agreement concerning the defendant's Criminal History Category.

C.   "FACTUAL BASIS" AND "RELEVANT CONDUCT" INFORMATION.

The parties agree that the facts in the "factual basis" paragraph of this agreement, if any, are true, and may be considered as "relevant conduct" under U.S.S.G. § 1B1.3 and as the nature and circumstances of the offense under 18 U.S.C. § 3553(a)(1).

The parties agree that all information known by the office of United States Pretrial Service may be used by the Probation Office in submitting its presentence report, and may be disclosed to the court for purposes of sentencing.

D.   PARTIES' RECOMMENDATION REGARDING SENTENCING.

The United States will make a non-binding recommendation that defendant be sentenced to the low end of the advisory guideline range.

The United States will not oppose the imposition of a concurrent sentence to Defendant's federal sentence for receipt of child pornography in the District of Nevada should the Court exercise its discretion to do so.

6

## VI

## <u>DEFENDANT WAIVES APPEAL AND COLLATERAL ATTACK</u>

The defendant hereby knowingly and expressly waives any and all rights to appeal the defendant's conviction and sentence, including any restitution order in this case, including a waiver of all motions, defenses, and objections which the defendant could assert to the charges or to the Court's entry of Judgment against the defendant, and including review pursuant to 18 U.S.C. ' 3742 of any sentence imposed.

The defendant further knowingly and expressly waives any and all rights to contest the defendant's conviction and sentence in any post-conviction proceedings, including any proceedings under 28 U.S.C. ' 2255, except:

(a) The right to timely challenge the defendant's conviction and the sentence of the Court should the Eighth Circuit Court of Appeals or the United States Supreme Court later find that the charge to which the defendant is agreeing to plead guilty fails to state a crime.

(b) The right to seek post-conviction relief based on ineffective assistance of counsel, or prosecutorial misconduct, if the grounds for such claim could not be known by the defendant at the time the Defendant enters the guilty plea contemplated by this plea agreement.

If defendant breaches this plea agreement, at any time, in any way, including, but not limited to, appealing or collaterally attacking the conviction or sentence, the United States may prosecute defendant for any counts, including those with mandatory minimum sentences, dismissed or not charged pursuant to this plea agreement. Additionally, the United States may use any factual admissions made by defendant pursuant to this plea agreement in any such prosecution.

## VII

## <u>BREACH OF AGREEMENT</u>

Should it be concluded by the United States that the defendant has committed a crime subsequent to signing the plea agreement, or otherwise violated this plea agreement, the defendant shall then be subject to prosecution for any federal, state, or local crime(s) which this agreement otherwise anticipated would be dismissed or not prosecuted. Any such prosecution(s) may be premised upon any information, statement, or testimony provided by the defendant.

7

In the event the defendant commits a crime or otherwise violates any term or condition of this plea agreement, the defendant shall not, because of such violation of this agreement, be allowed to withdraw the defendant's plea of guilty, and the United States will be relieved of any obligation it otherwise has under this agreement, and may withdraw any motions for dismissal of charges or for sentence relief it had already filed.

## VIII

## SCOPE OF AGREEMENT

A.  This plea agreement embodies the entire agreement between the parties and supersedes any other agreement, written or oral.

B.  By signing this agreement, the defendant agrees that the time between the date the defendant signs this agreement and the date of the guilty plea will be excluded under the Speedy Trial Act.  The defendant stipulates that such period of delay is necessary in order for the defendant to have opportunity to enter the anticipated plea of guilty, and that the ends of justice served by such period of delay outweigh the best interest of the defendant and the public in a speedy trial.

C.  The United States may use against the defendant any disclosure(s) the defendant has made pursuant to this agreement in any civil proceeding.  Nothing contained in this agreement shall in any manner limit the defendant's civil liability which may otherwise be found to exist, or in any manner limit or prevent the United States from pursuing any applicable civil remedy, including but not limited to remedies regarding asset forfeiture and/or taxation.

D.  Pursuant to 18 U.S.C. ' 3013, the defendant will pay to the Clerk of the District Court the mandatory special assessment of $100 for each felony count to which the defendant pleads guilty.  The defendant will make this payment at or before the time of sentencing.

E.  By signing this agreement, the defendant waives the right to withdraw the defendant=s plea of guilty pursuant to Federal Rule of Criminal Procedure 11(d).  The defendant may only withdraw the guilty plea in the event the court rejects the plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(5).

F.  This agreement may be withdrawn by the United States at any time prior to its being signed by all parties.

8

## IX

## MODIFICATION OF AGREEMENT MUST BE IN WRITING

This agreement ends all plea discussions. No promises, agreements or conditions have been entered into other than those set forth in this agreement, and none will be entered into unless in writing and signed by all parties.

## X

## DEFENDANT AND COUNSEL FULLY UNDERSTAND AGREEMENT

By signing this agreement, defendant certifies that defendant read it (or that it has been read to defendant in defendant=s native language). Defendant has discussed the terms of this agreement with defense counsel and fully understands its meaning and effect.

## XI

## DEFENDANT SATISFIED WITH COUNSEL

Defendant has consulted with counsel and is satisfied with counsel=s representation.

UNITED STATES OF AMERICA

DEBORAH R. GILG
United States Attorney

8-12-14
Date

for MICHAEL P. NORRIS
ASSISTANT U.S. ATTORNEY

8-12-14
Date

for KEITH BECKER
TRIAL ATTORNEY

8-12-14
Date

for SARAH CHANG
TRIAL ATTORNEY

8-5-2014
Date

ZACKARY AUSTIN
DEFENDANT

8-5-2014
Date

CHAD D. PRIMMER
ATTORNEY FOR DEFENDANT

9